# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRUNO N.R. ALVES, et al., <br><br> Plaintiffs, <br> vs. <br><br> PLAYER'S EDGE, INC., a Florida Corporation, et al., <br><br> Defendants. | CASE NO. 05CV1654 WQH (CAB) <br><br> ORDER RE: RADIO STATION DEFENDANTS AND LEISURE AND GAMING'S MOTIONS TO DISMISS |

HAYES, Judge:

Pending before the Court are motions to dismiss filed by Defendants Clear Channel Broadcasting, Inc. (Doc. # 103), Entercom Communications Corporation (Doc. # 99), Citadel Broadcasting Corporation (Doc. # 99), Jefferson-Pilot Corporation (Doc. # 99), and Leisure and Gaming, PLC (Doc. # 102). Pursuant to Civil Local Rule 7.1(f), Defendant Susquehanna Radio Corporation joins (Doc. # 100) in the motions to dismiss filed by Clear Channel Broadcasting, Inc. (Doc. # 103) and Entercom Communications Corporation (Doc. # 99), and Clear Channel Broadcasting, Inc., Entercom Communications Corporation, Citadel Broadcasting Corporation, and Jefferson-Pilot Corporation each join in each others' motions to dismiss. The Court finds these matters suitable for submission on the papers and without oral argument pursuant to Civil Local Rule 7.1(d)(1).

**PROCEDURAL HISTORY**

On August 3, 2006, Plaintiffs filed a First Amended Complaint against Defendants Clear Channel Broadcasting Corporation, Entercom Communications Corporation, Citadel Broadcasting Corporation, Jefferson-Pilot Corporation, and Susquehanna Radio Corporation (collectively, Radio Station Defendants), as well as against Defendant Leisure & Gaming, PLC, and numerous other persons and entities. (Doc. # 66). The First Amended Complaint asserts causes of action for violations of the federal Racketeer Influenced and Corrupt Organizations Act (RICO) and California unfair competition and fraudulent advertising laws. (Doc. # 66). On October 30, 2006, and October 31, 2006, the Radio Station Defendants moved to dismiss the First Amended Complaint for failure to state a claim upon which relief can be granted. (Docs. # 99, 100, 103). On October 31, 2006, Defendant Leisure & Gaming, PLC moved to dismiss the First Amended Complaint for failure to state a claim, lack of personal jurisdiction, and forum non conveniens. (Doc. # 102).

**ALLEGATIONS OF THE FIRST AMENDED COMPLAINT**

Plaintiffs are individuals who heard radio infomercials broadcast by the Radio Station Defendants which advertised a sports handicapping service operated first by Defendant Player's Edge, Inc., and later by Defendant National Sports Consultants. *First Amended Complaint*, ¶¶ 3, 25, 28, 67. Pre-recorded, the infomercials urged listeners to call a toll free number in order to take advantage of "inside" sports "betting" information which Defendants Player's Edge and National Sports Consultants claimed to possess, and promised to generate significant monies for bettors who were willing to follow the touted "program" "to the letter." *FAC*, ¶¶ 64, 67, 71, 83-83. The infomercials, which changed each week to correspond with weekend athletic events, often included statements such as "we are not looking for gamblers . . . we are looking for investors," "we have contacts everywhere," and "we are looking for the business man that wants to take $10,000 in September and make a quarter of a million by January." *FAC*, ¶¶ 67, 72.

After "being bombarded by the message in the infomercials," and believing that Defendants' betting program "presented a genuine and legitimate business opportunity with a substantial return on investment," Plaintiffs phoned the toll free number advertised on the infomercials and on related websites hosted by Defendants. *FAC*, ¶ 96. Thereafter, salespersons working for Defendants Player's

Edge, National Sports Consultants, or one of the other Defendants subjected Plaintiffs to "high pressure sales tactics" and "harass[ing]" behavior in order to induce Plaintiffs' participation in Defendants' betting "program." *FAC*, ¶¶ 3, 81, 101. Each Plaintiff ultimately "succumbed" to the sales pressure, and purchased a "gambling" "package" from Defendants Player's Edge, National Sports Consultants, or one of the other Defendants by wiring or mailing monies to the Defendants. *FAC*, ¶¶ 2, 71, 101-102. Many of the transactions between Plaintiffs and Defendants involved sums in excess of $10,000, and together Plaintiffs paid Defendants more than $1,500,000. *FAC*, ¶¶ 103-104.

After purchasing a "package," and as part of the betting "program," Plaintiffs were required to establish and deposit money into an account with either Defendants SBG Global, Bon Bini Holdings, or Legalbook Sports. *FAC*, ¶ 84. Defendant Leisure & Gaming, PLC, is the successor in interest to Legalbook Sports. *FAC*, ¶ 46. After Plaintiffs deposited money into an account, a Player's Edge or National Sports Consultants representative would call Plaintiffs "with a tip on a particular sports contest," and direct Plaintiffs to "place a wager" on the contest "in a specified amount and on a specified outcome." *FAC*, ¶ 84. Defendants had access to and monitored Plaintiffs' accounts to insure that Plaintiffs followed their instructions "to the letter," and also received "commissions" and "kickbacks" based upon the amounts wagered by Plaintiffs. *FAC*, ¶ 84. Defendants made money "by collecting package fees and wagering kickbacks/commissions regardless of the basis or success of the picks communicated" to Plaintiffs. *FAC*, ¶ 89. Defendant Legalbook Sports received monies from unsuccessful wagers placed by Plaintiffs and a percentage of the successful wagers, and occasionaly sent money to other Defendants. *FAC*, ¶¶ 91, 84.

Defendants' infomercials were false and misleading. *FAC*, ¶¶ 3, 77-79. Specifically, Defendants did not possess "inside" information, and it was not possible to "double or triple" one's money by following the betting "program" as promised in the infomercials. *FAC*, ¶¶ 77, 108. Instead, Defendants' touted betting tips were simply "best guesses" based on "publicly available information." *FAC*, ¶ 77. Plaintiffs allege that they justifiably relied on the statements in the infomercials, and had no reason to know that "any of the statements made therein . . . were untrue." *FAC*, ¶ 94.

Defendants Player's Edge and National Sports Consultants were the focal point of an

"enterprise" which "existed solely to carry on . . . a pattern of racketeering activity . . . ." *FAC*, ¶¶ 25, 28. The alleged enterprise included persons who owned stock in or were part of the management of Player's Edge, such as Defendants John Rodney and Robert Robitzek, as well as certain agents, employees, or independent contractors of Player's Edge and National Sports Consultants, such as Defendants Anthony Lee Miller, John D. Tartaglione, and Salvatore J. Salerno. *FAC*, ¶¶ 26-43. Radio Station Defendants "were willing and knowing participants in the Enterprise and associates thereof," and "directly supported the Enterprise's business by broadcasting for a fee the Enterprise's infomercials with knowledge of their contents." *FAC*, ¶¶ 52, 92.

At least in 2002 and 2003, the Radio Station Defendants received the infomercials in prerecorded form, and knew, or could have known, the content of the infomercials before broadcasting the infomercials. *FAC*, ¶ 66. Defendants SBG Global, Bon Bini Holdings, and or Legalbook Sports paid the Radio Station Defendants to broadcast the infomercials, and the infomercials often included "commercials" which promoted off-shore casinos owned by SBG Global, Bon Bini Holdings, and Legalbook Sports. *FAC*, ¶¶ 64-65. In 2003, the United States Department of Justice sent letters to the Radio Station Defendants warning that "their acceptance and broadcasting of advertisements in support of offshore and online gambling businesses could subject the broadcaster to federal criminal liability for aiding and abetting violations of federal gambling laws." *FAC*, ¶ 111. Despite the warning, the Radio Station Defendants continued to broadcast the enterprise's infomercials until "at least the spring of 2004." *FAC*, ¶ 111.

The "business of the enterprise" ended in April of 2004, when the United States filed a criminal complaint against Defendants Rodney, Robitzek, Miller, Salerno, Joseph DiLorenzo, Gerard H. Hendel, Todd R. Meady, and Jai Pasquale. *FAC*, ¶ 112. As of the date of the First Amended Complaint, Defendants Rodney, Robitzek, Meady, Paraldi, Tartaglione, Hendel, Miller, and Pasquale had either pleaded guilty or agreed to plead guilty to federal gambling law violations. *FAC*, ¶¶ 112-113. Defendant Hendel admitted that, "I knew what I was doing was wrong. I chose to stay because of the easy money and easy work." *FAC*, ¶ 115.

**STANDARD OF REVIEW**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings. *De La*

*Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir. 1978). A complaint may not be dismissed for failure to state a claim under Rule 12(b)(6), "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In ruling on a motion pursuant to Rule 12(b)(6), a court must construe the pleadings in the light most favorable to the plaintiff, and further, must accept as true all material allegations in the complaint, as well as any reasonable inferences to be drawn therefrom. *See Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003), *see also Chang v. Chen*, 80 F.3d 1293 (9th Cir. 1996). In considering a Rule 12(b)(6) dismissal, a court may not look beyond the complaint. *Moore v. Costa Mesa*, 886 F.2d 260, 262 (9th Cir. 1989).

## DISCUSSION

**I. RADIO STATION DEFENDANTS' MOTIONS TO DISMISS**

Plaintiffs' First Amended Complaint asserts claims for civil racketeering pursuant to 18 U.S.C. §§ 1962(c) and (d), as well as claims pursuant to California's unfair competition and false and deceptive advertising laws. *FAC*, ¶¶ 129-30, 136-143; *see* CAL. BUS. & PROF. CODE §§ 17200 & 17500, et seq.

Radio Station Defendants move to dismiss Plaintiffs' First Amended Complaint for failure to state a claim upon which relief may be granted. Specifically, Radio Station Defendants contend that Plaintiffs have not adequately alleged a separate and distinct "enterprise" as required by 18 U.S.C. §§ 1962(c)-(d), and have not alleged facts demonstrating that the Radio Station Defendants participated or conspired in the operation of an enterprise. Radio Station Defendants further contend that Plaintiffs cannot state a claim under CAL. BUS. & PROF. CODE §§ 17200 and 17500 because Plaintiffs have no available remedy under the statutes, California courts do not allow recovery in gambling disputes, and Radio Station Defendants are exempt from prosecution under CAL. BUS. & PROF. CODE §§ 17500 pursuant to CAL. BUS. & PROF. CODE § 17502.

Plaintiffs contend that the First Amended Complaint adequately alleges the existence of an enterprise separate and distinct from the alleged pattern of racketeering, particularly in light of the allegations involving corporate Defendants. Plaintiffs also contend that the allegations support a conspiracy to violate RICO cause of action because the Radio Station Defendants knew or should have

known that the prerecorded infomercials encouraged illegal actions such as wire fraud and illegal gambling. Plaintiffs contend that public policy does not bar their state claim for unfair competition, and further, that they are entitled to recover the broadcast fees paid to the Radio Station Defendants by Defendants Bon Bini Holdings, Legalbook Sports, and SBG Global under a theory of restitution.

### A. Plaintiffs' 18 U.S.C. § 1962(c) RICO Claim

#### *1. The Enterprise Element*

Section 1962(c) prohibits "any person employed by or associated with any enterprise" from "conduct[ing] or [participating], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." 18 U.S.C. § 1962(c). In order to state a claim under 18 U.S.C. § 1962(c), a plaintiff must allege a RICO "enterprise" which is "separate and apart from the pattern of activity in which [the enterprise] engages." *Chang v. Chen*, 80 F.3d 1293, 1297 (9th Cir. 1996), *citing United States v. Turkette*, 452 U.S. 576, 583 (1981); *see also Wagh v. Metris Direct*, 348 F.3d 1102, 1112 (9th Cir. 2003). "The definition of 'enterprise' encompasses both groups with a formal legal structure and those whose members merely associate in fact, . . . however, a group does not constitute an enterprise unless it exists independently from the racketeering activity in which it engages." *Simon v. Value Behavioral Health, Inc.*, 208 F.3d 1073, 1083-84 (9th Cir. 2000); *see also* 18 U.S.C. §§ 1961(4)-(5). "[A] conspiracy is not an enterprise for the purposes of RICO. *Simon*, 208 F.3d at 1083, *citing Chang*, 80 F.3d at 1300. In order to sufficiently allege an "enterprise" under 18 U.S.C. § 1962, a complaint must allege an entity with "some sort of structure . . . for the making of decisions," and "some mechanisms for controlling and directing the affairs of the group on an on-going, rather than an ad hoc, basis. *Simon*, 208 F.3d at 1083, *citing Chang*, 80 F.3d at 1299. "[A] RICO enterprise cannot be merely the sum of the predicate racketeering acts . . . ." *In re National Western Life Insurance Deferred Annuities Litigation*, 467 F. Supp. 2d 1071, 1080 (S.D. Cal. 2006).

The First Amended Complaint alleges that Defendant Player's Edge is the focal point of the enterprise and racketeering activity, and further, that "[t]he Enterprise existed solely to carry on the acts alleged herein that constitute a pattern of racketeering activity . . . ." *FAC*, ¶ 25. The First Amended Complaint also alleges that "there seems to be no meaningful difference between the Enterprise and the pattern of racketeering activity," and that the Enterprise and the pattern of

racketeering "merged into one entity." *FAC*, ¶ 25. The First Amended Complaint alleges that the enterprise has employees, agents, and or salespeople. *FAC*, ¶¶ 37-43, 98.

After reviewing the allegations of the First Amended Complaint, the Court concludes that the First Amended Complaint fails to allege facts which indicate that the alleged enterprise is separate and distinct from the pattern of racketeering and has a "structure" for making decisions, or some "mechanism for controlling and directing the affairs of the group on an on-going . . . basis." *Chang*, 80 F.3d at 1299; *Simon*, 208 F.3d at 1083. Aside from allegations that the enterprise had employees or agents, there are no facts alleged which indicate a structure to the alleged enterprise, and no facts alleged which indicate that the enterprise possessed a decision making process or hierarchal organization. Rather than alleging a structured entity apart from the alleged pattern of racketeering as required by RICO and its interpreting case law, *see Wagh*, 348 F.3d at 1112, the First Amended Complaint alleges that "there seems to be no meaningful difference between the Enterprise and the pattern of racketeering activity," and that the enterprise and the pattern of racketeering "merged into one entity." *FAC*, ¶ 25. Such allegations are insufficient to allege an enterprise, and to find them sufficient to state a claim under 18 U.S.C. § 1962(c) would render the statute's enterprise element "superfluous" and would ignore "the organizational nexus at the heart of the RICO scheme." *Chang*, 80 F.3d at 1298-99, *citing Allington v. Carpenter*, 619 F. Supp. 474, 479 (C.D. Cal. 1985); *see also Simon*, 208 F.3d at 1083 (plaintiff failed to allege an "enterprise" when he did not allege facts that showed a structure to Appellees' collusion beyond the racketeering activity itself); *Wagh*, 348 F.3d at 1112 (plaintiff failed to allege an enterprise by failing to allege a decision making structure beyond that inherent in the alleged racketeering activity).

Plaintiffs contend that their inclusion of corporate Defendants Player's Edge and National Sports Consultants in the enterprise automatically meets the additional requirement of a separate structure, and cite *Webster v. Omnitrition International, Inc.*, 79 F.3d 776, 786 (9th Cir. 1996) in support. The Court of Appeal for the Ninth Circuit held in *Webster* that, "[t]he participation of a corporation in a racketeering scheme is sufficient, of itself, to give the enterprise a structure separate from the racketeering activity." *Webster*, 79 F.3d at 787-88. Since *Webster*, however, the Ninth Circuit has nevertheless required an alleged enterprise to exhibit a separate structure even where

corporate defendants are alleged to be involved. *See Wagh*, 348 F.3d 1102, 1112 (9th Cir. 2003) (complaint did not allege an enterprise involving multiple corporations and individuals because there was no decision making structure alleged); *Simon*, 208 F.3d 1073 (9th Cir. 2000) (presence of corporate defendants alone not enough to meet an enterprise's separate structure requirement); *Chang v. Chen*, 80 F.3d at 1300-01 (9th Cir. 1996) (presence of corporation *can* satisfy structure element *if* legal corporate existence is separate from participation in racketeering). The Court concludes that "plaintiffs cannot satisfy the requirement that they plead an enterprise merely by pleading that a corporation participated in the alleged enterprise . . . ." *In re Conseco Insurance Co. Annuity Marketing & Sales Practices Litigation*, Nos. C-05-04726 RMW & C-06-00537 RMW, 2007 U.S. Dist. LEXIS 12786, at *11-12 (N.D. Cal. Feb. 12, 2007).

Corporate defendants can supply the necessary structure to an otherwise inadequately alleged enterprise where the enterprise's activities are separate and distinct from the legal non-enterprise activities of the corporate defendants. *See In re National Western Life Insurance Deferred Annuities Litigation*, 467 F. Supp. 2d at 1082. In this case, however, the First Amended Complaint alleges that "there seems to be no meaningful difference between the Enterprise and the pattern of racketeering activity," and that "[t]here were no meaningful daily activities of the Enterprise which were not directed at the pattern of racketeering activities." *FAC*, ¶ 25; *see Simon*, 348 F.3d at 1112 ("A RICO plaintiff must allege a structure for the making of decisions separate and apart from the alleged racketeering activities . . . ."); *In re Conseco Insurance Co. Annuity Marketing & Sales Practices Litigation*, 2007 U.S. Dist. LEXIS 12786, at *11-12 (plaintiffs admitted that the business of the enterprise is also the ordinary business of the defendants, and thus did not sufficiently allege a enterprise).

After reviewing the First Amended Complaint, the Court concludes that the allegations of the First Amended Complaint do not allege an "enterprise" as defined by 18 U.S.C. § 1961(4), and as required by 18 U.S.C. § 1962(c), because (1) the enterprise is not alleged to be separate and apart from the pattern of racketeering, and (2) there are no allegations indicating that the enterprise exhibited a separate structure and decision making process.

*2. Operation and Management Element*

1    In addition to alleging a separate and distinct enterprise, in order to state a claim pursuant to 18 U.S.C. § 1962(c) a complaint must allege that a defendant "participated in the operation or management of the enterprise," *Reves v. Ernst & Young*, 507 U.S. 170, 185-86 (1993), or took "some part in directing the enterprise's affairs . . . ." *Reves*, 507 U.S. at 179; *see also Baumer v. Pachl*, 8 F.3d 1341, 1343-44 (9th Cir. 1993); *United States v. Fernandez*, 388 F.3d 1199, 1228 (9th Cir. 2004). Though "liability under § 1962(c) is not limited" to an enterprise's "upper management," *Fernandez*, 388 F.3d at 1228, *citing Reves*, 507 at 184, allegations that a defendant took directions or performed tasks for the enterprise are not enough to state a claim under § 1962(c). *Hamilton v. Willms*, CV F 02 6583 AWI SMS, 2005 U.S. Dist. LEXIS 25697, at *26 (E.D. Cal. Oct. 27, 2005).

After reviewing the First Amended Complaint, the Court concludes that there are no allegations that Radio Station Defendants "participated in the operation or management of the enterprise," as required to state a claim pursuant to 18 U.S.C. § 1962(c). *See Baumer*, 8 F.3d at 1344. Plaintiffs allege only that the Radio Station Defendants accepted broadcast fees and aired the infomercials at the direction of other Defendants, and there are no allegations that the Radio Station Defendants took some part in directing the affairs of the alleged enterprise. *See Baumer*, 8 F.3d at 1344 (plaintiff did not state a claim against lawyer who simply provided legal services to an enterprise); *see also Univ. of Md. at Baltimore v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1539 (3d Cir. 1990) (simply providing goods or services that ultimately benefit an enterprise does not create RICO liability). The Court concludes that the First Amended Complaint fails to allege that Radio Station Defendants' operated or managed the enterprise as required by 18 U.S.C. § 1962(c).

Radio Station Defendants' motions to dismiss Plaintiffs' § 1962(c) claim are GRANTED.

### B. Plaintiffs' 18 U.S.C. § 1962(d) RICO Claim

Section 1962(d) declares it unlawful "for any person to conspire to violate" subsections (a), (b), or (c) of 18 U.S.C. § 1962. In order to state a claim pursuant to § 1962(d), a complaint must first plead the requisite elements of 18 U.S.C. § 1962 subsections (a), (b), or (c). *Simon*, 208 F.3d at 1083-84 (plaintiff did not state a claim under § 1962(d) because the complaint did not allege an enterprise as required by 18 U.S.C. § 1962 subsections (a) and (c)); *see also Wagh*, 348 F.3d at 1112. Plaintiffs in this case allege that Defendants Player's Edge, National Sports Consultants, and John Rodney,

among others, led a "scamdicapping enterprise" in violation of 18 U.S.C. § 1962(c). *FAC*, ¶¶ 58, 130. Plaintiffs further allege that the Radio Station Defendants conspired to violate 18 U.S.C. § 1962(c) in violation of 18 U.S.C. § 1962(d). Accordingly, Plaintiffs' claim pursuant to 18 U.S.C. § 1962(d) depends in part upon Plaintiffs stating a cognizable claim pursuant to 18 U.S.C. § 1962(c).

In this case, the Court has already concluded that the First Amended Complaint does not allege an "enterprise" as required by 18 U.S.C. § 1962(c). As a result, Plaintiffs cannot, as a matter of law, state a conspiracy cause of action pursuant to 18 U.S.C. § 1962(d). *See Wagh*, 348 F.3d at 1112; *Simon*, 208 F.3d at 1084. Radio Station Defendants' motions to dismiss Plaintiffs' conspiracy cause of action are GRANTED.

### C. Plaintiffs' California State Law Claims

In addition to the federal RICO causes of action, Plaintiffs assert California state statutory claims for unfair competition pursuant to CAL. BUS. & PROF. CODE § 17200 et seq., and false, misleading, or deceptive advertising pursuant to CAL. BUS. & PROF. CODE § 17500, et seq. Radio Station Defendants contend that those claims are barred by California public policy, a statutory safe harbor provision, and because there are no available remedies open to Plaintiffs under California law. Plaintiffs contend that the state claims are proper because the Radio Station Defendants did not air the infomercials in good faith, and because public policy requires that they be made whole.

Pursuant to 28 U.S.C. § 1367, a district court has supplemental jurisdiction over state law claims which are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367(a). However, even where supplement jurisdiction exists, a district court may decline to exercise supplemental jurisdiction if the state claims are novel or complex, substantially predominate over federal claims, or for other compelling reasons. 28 U.S.C. § 1367(c); *see also City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 172-73 (1997). Aside from the factors listed explicitly in 28 U.S.C. § 1367(c), a court may consider the circumstances of a particular case, the nature of the state laws, and the relationship between the state and federal claims when considering whether to exercise supplemental jurisdiction. *Id*. Supplemental jurisdiction is "a doctrine of discretion, not of plaintiff's right." *City of Chicago*, 522 U.S. at 172.

The Court has previously dismissed Plaintiffs' federal RICO claims for failure to allege an

1  enterprise, and thus the only remaining claims against Radio Station Defendants are state law claims.
2  The Court concludes that the state law claims substantially predominate at this stage of the
3  proceedings, and declines to exercise supplemental jurisdiction over them. Plaintiffs' claims pursuant
4  to CAL. BUS. & PROF. CODE §§ 17200 and 17500 are DISMISSED without prejudice.

5  For the above reasons, Radio Station Defendants' motions to dismiss (Docs. # 99, 100, 103)
6  are hereby GRANTED.

7  **II. LEISURE & GAMING, PLC'S MOTION TO DISMISS**

8  Defendant Leisure & Gaming, PLC moves to dismiss Plaintiffs' First Amended Complaint for
9  failure to state a claim upon which relief can be granted, lack of personal jurisdiction, and forum non
10 conveniens. Specifically, Leisure & Gaming, PLC contends that Plaintiffs have not adequately alleged
11 an enterprise as required by 18 U.S.C. §§ 1962(c) and (d), and further that the Court lacks personal
12 jurisdiction over Leisure & Gaming because Leisure & Gaming does not have sufficient minimum
13 contacts with California. Leisure & Gaming, which is a United Kingdom corporation, also contends
14 that it would be difficult and inconvenient for the parties to maintain the suit in the Southern District
15 of California.

16 The First Amended Complaint does not allege an enterprise for the purposes of maintaining
17 a suit pursuant to 18 U.S.C. §§ 1962(c) and (d). Accordingly, Defendant Leisure & Gaming, PLC's
18 motion to dismiss is GRANTED. (Doc. # 102).

19 **CONCLUSION**

20 Radio Station Defendants' motions to dismiss (Docs. # 99, 100, 103) are GRANTED.
21 Defendant Leisure & Gaming, PLC's motion to dismiss (Doc. # 102) is GRANTED.
22 **IT IS SO ORDERED**.

23

24 DATED: April 26, 2007

25
  **WILLIAM Q. HAYES**
26 United States District Judge

27

28